IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 6, 2018

**LAZETTE SANDERS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Hardeman County**
**No. 2016-CR-165   J. Weber McCraw, Judge**

_____

**No. W2018-00098-CCA-R3-PC**

_____

Petitioner, Lazette Sanders, was indicted by the Hardeman County Grand Jury for one count of attempted first degree murder. Petitioner pleaded guilty to the amended charge of attempted second degree murder and received a sentence as a Range I offender of eight years in the Tennessee Department of Correction. Petitioner filed a petition seeking post-conviction relief, in which she alleged that she received the ineffective assistance of counsel and that her guilty plea was not knowingly and voluntarily entered. Following an evidentiary hearing, the post-conviction court denied her petition. Petitioner appeals and we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Colin Rosser, Somerville, Tennessee (on appeal) and Bo G. Burk, District Public Defender; and Shana Johnson, Assistant Public Defender (at trial) for the appellant, Lazette Sanders.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Untimely notice of appeal*

The post-conviction court's order denying relief was filed on December 12, 2017. Petitioner's notice of appeal was filed on January 16, 2018. Rule 4 of the Tennessee

Rules of Appellate Procedure requires that "the notice of appeal . . . shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]" Tenn. R. App. P. 4. As the State notes in its brief:

> The record indicates that the petitioner's notice of appeal was sent by "U.S. Mail, postage prepaid" on January 9, 2018. The State recognizes that if this form of mail is sufficient to constitute "certified return receipt mail or registered return receipt mail," then the notice of appeal was timely filed. However, if this form of mail is not sufficient, then pursuant to Tenn. R. App. P. 4, the notice of appeal is untimely and the State would respectfully request that this Court dismiss the appeal.

Rule 20(a) of the Tennessee Rules of Appellate Procedure provides that "[f]iling shall not be timely unless the papers are received by the clerk within the time fixed for filing or mailed to the office of the clerk by certified return receipt mail or registered return receipt mail within the time fixed for filing." Tenn. R. App. P. 20(a). The envelope used to mail Petitioner's notice of appeal was neither "certified return receipt mail" nor "registered return receipt mail." Accordingly, Petitioner's notice of appeal was untimely. When this appeal was initially before this court, we dismissed the appeal because the notice of appeal was not timely filed. Although the State noted this problem in its brief, Petitioner did nothing to move for waiver of the timely filing of the notice of appeal. Subsequently, counsel for Petitioner filed both a petition to rehear and a motion to withdraw as counsel. The motion to withdraw was denied. Petitioner's petition to rehear still did not set forth any explanation of why the notice of appeal was not timely filed and failed to explicitly request waiver of the timely filing of the notice of appeal. This court ordered Petitioner to amend her petition to rehear and set forth why timely filing of the notice of appeal should be waived.

Petitioner timely filed an amended petition to rehear. In it, Petitioner's counsel stated that he was not appointed to represent Petitioner until after the untimely notice of appeal had already been filed by Petitioner's prior counsel. Current counsel stated that he "overlooked" the sentence at the end of the State's "Statement of the Case" in its brief which raised the problem with the untimely filing of the notice of appeal. Counsel fails to include that he overlooked the above quoted statement by the State which was footnoted in the last sentence of the "Statement of the Case."

Counsel's explanation of what caused the late filing of the notice of appeal is set forth as follows:

> 7. Counsel filed Appellant's Brief on June 1, 2018 within the extended time period granted by the Court and unopposed by the State.

8. Prior counsel before current counsel sent Notice of Appeal by postage, prepaid on January 9, 2018, and the Clerk's Office received and filed the Notice of Appeal on January 16, 2018. Prior counsel was not aware this was not a correct way to file Notice of Appeal; and also believed it was mailed with plenty of time for the U.S. Postal Service to deliver the Notice of Appeal from Somerville, TN to the Court of Appeals Clerk's Office in Jackson, TN before the filing deadline of January 11, 2018.

9. Counsel was not aware that the Notice of Appeal had not been filed timely due to being granted an extension of time to file the Appellant's brief and believing prior counsel had filed the Notice of Appeal on time.

10. Therefore, Notice of Appeal was not timely filed due to a presumed misunderstanding of the filing procedures by prior counsel and Counsel presuming Notice of Appeal was filed correctly when he substituted in representation.

Counsel's "overlook[ing]" a portion of the State's brief which requests the appeal be dismissed is baffling and of great concern to this court. We note that in the opinion which has already been filed, this court set forth a full review of the facts and applicable law and concluded that Petitioner would not be entitled to relief even if the notice of appeal had been timely filed. However, we also stated that failure by the Petitioner to address the issue of an untimely filed notice of appeal constituted a significant reason for dismissing the appeal. Accordingly, we grant the request to waive the timely filing of the notice of appeal. We issue this opinion which addresses the issues strictly on the merits and not by dicta.

*Facts*

The State gave the following factual basis for Petitioner's plea at the plea submission hearing:

Your Honor, had this matter gone to trial, the State would have introduced proof that on or about the 18th day of September of 2015[,] officers from the Whiteville Police Department were dispatched to the Super 8 Hotel in Whiteville, here in Hardeman County, Tennessee, related to a stabbing of a sixteen year old black female.

- 3 -

Upon arrival at the scene, the officers saw a group of people standing around a black female who had been stabbed, family member holding pressure over the wound to her chest. The officer looked at the wound, could see an open chest wound located above her right breast near the fourth intercostal space. Obviously, the officer was a paramedic because he knows a lot more about these terms than I do. He advised dispatch to activate hospital wing and EMS and he provided the necessary treatment on this child that kept her alive until the helicopter got there. The minor child's name was Imani (spelled phonetically) Bender. She was a guest there, had come down from the Chicago area, I believe, . . . with a group of family members. The investigation of this showed that she and her mother, the defendant in this matter, Lazette Sanders, had gotten into an argument that led to an altercation wherein [Defendant] grabbed a pair of scissors and stabbed her daughter in the hotel room. After the stabbing, the child ran from the room to the location outside where she was subsequently discovered by other guests of the hotel and some family members.

The child, outside the presence of the mother, stated that there had been a shouting back and forth between her and her mother and stated that before she stabbed her, her mom said, "I'm going to kill you," turned around and grabbed the scissors and stabbed her in the chest. Based on that, the defendant was charged with attempted first degree murder. Through negotiations with [Defendant], the State has agreed to amend this to an attempted second degree murder.

The trial court informed Petitioner of her constitutional rights to a jury trial, to appeal a guilty verdict, to confront the State's witnesses and subpoena witnesses, not to testify, and to be represented by counsel. Petitioner stated that she understood her rights and agreed to waive them. She stated that she was satisfied with trial counsel's performance. The trial court asked Petitioner,

[Court]: Do you substantially agree that those would be the facts that the State would attempt to present?

[Defense counsel]: That they would attempt to present. That doesn't mean you agree that's what happened.

[Petitioner]: Oh. Okay.

[Defense counsel]: Is that correct?

- 4 -

[Petitioner]: Yes.

[Defense counsel]: I mean, you heard how he – the Judge asked you, you understand that's what the State would present.

[Petitioner]: Yeah, but that ain't how it went. But, yeah, I understand.

[Court]: All right. But do you agree that those are the facts the State would present –

[Petitioner]: Yes.

[Court]: – against you.

The trial court asked Petitioner if anyone forced her to plead guilty or promised her anything to plead guilty, and Petitioner responded that no one had. The following exchange occurred:

[Court]: To the charge, ma'am, of attempted second degree murder, do you plead guilty or do you plead not guilty?

[Petitioner]: I guess guilty.

[Court]: All right. It's not any guessing.

[Petitioner]: Yes, I guess guilty.

[Court]: If you don't want to go forward with this today, you don't have to – but you have to –

[Petitioner]: No. I'm just guilty.

[Court]: – clearly either plead guilty or not guilty.

[Petitioner]: Guilty.

[Court]: Are you prepared –

[Petitioner]: I plead guilty.

[Court]: – to do that today?

[Petitioner]: Yes.

[Court]: All right. Do you understand what you're doing?

[Petitioner]: Yes.

[Court]: Do you need a chance to speak with your lawyer?

[Petitioner]: No. I'm speaking for God. I'm ready.

[Court]: Let me ask the question again. If you can answer it, fine. If you can't, just let me know. It's your day in court and it's an important question that I have to ask and I have to have a clear answer. To the charge, ma'am, of attempted second degree murder, do you plead guilty or do you plead not guilty?

[Petitioner]: I plead guilty.

[Court]: Any questions now?

[Petitioner]: No.

[Court]: All right.

The trial court found that Petitioner was competent to enter a guilty plea, that she understood the consequences of her plea, and that the State presented sufficient facts to support the plea, and that Petitioner "entered into this freely, voluntarily, and intelligently." Petitioner then apparently became emotional, and the trial court offered to stop the proceedings and to allow Petitioner to change her plea. Petitioner answered that she did not wish to change her plea.

### Post-conviction hearing

At the post-conviction hearing, trial counsel testified that she had been employed at the public defender's office for 27 years. She testified that the State provided discovery and a plea offer of attempted second degree murder with an agreed sentence of eight years. She reviewed the State's discovery response with Petitioner, and she discussed the plea offer with Petitioner and explained the sentence. Trial counsel testified that she explained to Petitioner that she would be eligible for parole after serving

30 percent of her sentence incarcerated. Trial counsel testified that she believed Petitioner understood the plea agreement, and she testified Petitioner "was very remorseful and did not wish to put her kids through any more than they had already been through but she also was very wishful and hopeful to get back home to them in Chicago as quickly as possible." Trial counsel testified that Petitioner underwent a psychological evaluation and was found to be competent.

On cross-examination, trial counsel testified that she was not able to interview Petitioner's children as potential witnesses because "[t]here were some people putting up roadblocks on access to the children in Chicago." Trial counsel testified that Petitioner maintained that she did not agree with the State's version of events. Trial counsel testified that she explained to Petitioner her exposure if the State had prevailed at a trial on the indicted offense of attempted first degree murder. Trial counsel discussed with Petitioner possible defense strategies, including presenting evidence "that the [victim] was maybe being a little out of control and disrespectful and assaultive herself . . . ." Trial counsel testified, "I felt like [Petitioner] was doing the right thing by not letting a jury decide her fate."

Petitioner testified that she did not agree with the State's factual basis. She testified that the victim threatened "to kill herself so then I was like, 'Huh, here's the scissors, kill yourself. I don't care.'" Petitioner testified that she handed the victim a pair of scissors, and the victim "was cut" when she grabbed the scissors from Petitioner. Petitioner got towels for the victim and told her son to call 9-1-1.

Petitioner testified that she "sat in jail already for a year and a half" before she entered her guilty plea and that her family encouraged her to accept the plea offer. Petitioner testified that she believed she would be released from incarceration when she became eligible for parole, however, she was denied parole following a hearing "due to the nature of the crime." Petitioner testified that she wanted the post-conviction court "[t]o give [her] relief and . . . send [her] home back to [her] kids and [her] family."

The post-conviction court denied relief by written order, in which the court concluded that Petitioner "actually understood the significance and consequences of the particular decision to plea[d] guilty and the decision was not coerced." The post-conviction court also found, "[c]onsidering the overwhelming evidence against [Petitioner] and the testimony at the post-conviction hearing about her defense, the Court believes her attorney negotiated the best deal possible and successfully negotiated a lesser charge." The post-conviction court accredited the testimony of trial counsel and concluded that "Petitioner failed to show any deficient performance by [trial counsel] or that she was prejudiced."

*Analysis*

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. *Id*. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *See Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Id*. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)).

The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *House v. State*, 44 S.W.3d 508, 516 (Tenn. 2001).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. *Blankenship*, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his or her familiarity with criminal proceedings; (3) whether he or she was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him or her and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. *Id.* at 904-05.

In her brief on appeal, Petitioner contends that trial counsel provided ineffective assistance; however, Petitioner does not provide one example of trial counsel's deficient performance. Petitioner argues, "[t]he ultimate finding against [Petitioner] was not a just outcome due to the ineffectiveness of [Petitioner]'s counsel, as well as the Trial Court's abuse of discretion in finding [Petitioner] had effective counsel." Petitioner argues that "she did not agree with the facts that would have been presented against her in trial read by the State during her plea," and that "her family urged her to take the plea offer," and that she had the understanding that she would be released after serving the time required

for her release eligibility date to go into effect." Petitioner claims that these arguments somehow amount to counsel errors and that such errors "are easily sufficient to establish" ineffective assistance. We disagree. There is nothing in the record that preponderates against the post-conviction court's findings: (1) that trial counsel's performance was not deficient; (2) that Petitioner was not prejudiced by any alleged deficiencies; or (3) that Petitioner's plea was knowingly and voluntarily entered. In fact, the transcript of the plea hearing shows that the trial court gave Petitioner ample opportunity to plead not guilty before it accepted her guilty plea. Petitioner is not entitled to relief.

CONCLUSION

Based on the foregoing, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE